UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TUSHALINA MOORMAN,

                 Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security Operations,

                 Defendant.

Case No. 3:17-cv-05638-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and SSI benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

For the reasons set forth below, the undersigned reverses defendant's decision to deny benefits and remands this matter for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On January 24, 2014, plaintiff filed applications for disability insurance benefits and SSI benefits, alleging that she became disabled beginning February 22, 2013. Dkt. 4, Administrative Record (AR) 21. These applications were denied by the Social Security Administration March 31, 2014, and reconsideration was denied on July 9, 2014. *Id.* A hearing was held before an administrative law judge ("ALJ"), at which plaintiff appeared and testified, as did a vocational expert. *Id.*

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

In a decision dated April 8, 2016, the ALJ found that plaintiff could perform some jobs existing in significant numbers in the national economy and therefore that she was not disabled. AR 33-34. Plaintiff's request for review was denied by the Appeals Council on June 19, 2017, making the ALJ's decision the final decision of the Commissioner; plaintiff appealed to this Court on December 1, 2017. AR 1; Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

In a written decision dated April 8, 2016, the ALJ determined that plaintiff was not disabled. AR 23-32. Step one and two of the five-step analysis were resolved in plaintiff's favor. AR 23. The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability and that she had the following severe impairments: mental health conditions described as major depressive disorder, post-traumatic stress disorder ("PTSD"), and pain disorder with related psychological factors. *Id.* At step three, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 25.

In assessing the plaintiff's residual functional capacity (RFC), the ALJ found that she had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: 1) she is limited to simple, routine tasks, and 2) superficial public contact. Because of his assessment of the plaintiff's RFC, the ALJ found that the plaintiff was not disabled because there were a number of jobs that exist in significant numbers in the national economy that the plaintiff could perform.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits. She alleges that the ALJ erred:

(1) in evaluating the medical evidence;

(2) in discounting plaintiff's credibility;

|   |   |
|---|---|
| (3) | in assessing plaintiff's residual functional capacity; and |
| (4) | in finding plaintiff could perform other jobs existing in significant numbers in the national economy. |

For the reasons set forth below, the Court finds that the ALJ erred in assessing medical opinion evidence and plaintiff's credibility, and therefore in determining the plaintiff's residual functional capacity, and thus in determining whether plaintiff is disabled.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. **<u>The ALJ's Evaluation of the Medical and Other-Source Opinion Evidence</u>**

The plaintiff asserts that the ALJ failed to provide specific and legitimate reasons in discrediting the opinions of four treating medical professionals and psychologists. Specifically, the plaintiff claims that the opinions of Nancy Pascua, ARNP, Kimberly Wheeler, Ph.D., Natalie Boodin, M.D., and some opinions of John Nance, Ph.D., were not given sufficient weight.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 725. The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that

opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* Essentially, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without an explanation that another medical opinion is more persuasive, or criticizing it with boiler plate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31.

        a.     <u>Treating Source: Nancy Pascua, ARNP</u>

Plaintiff contends that the ALJ failed to give proper weight to the opinion of advanced registered nurse practitioner (ARNP) Nancy Pascua. The plaintiff argues that as a treating source, Nurse Pascua's opinion should be afforded greater weight.

Nurse Pascua completed a Mental Residual Functional Capacity Assessment of the plaintiff. AR 853-55. This assessment stated that the plaintiff had moderately severe or severe problems with understanding and memory, sustained concentration and persistence, social

interaction, and adaptation. *Id.* Further, Nurse Pascua marked a number of potential work related stressors which could potentially increase the plaintiff's level of impairment. *Id.*

The ALJ gave little weight to Nurse Pascua's opinion because "the objective evidence of the claimant's mental functioning, and the claimant's level of mental health treatment do not support the marked limitations indicated by Nurse Pascua." AR 30. The ALJ also stated that Nurse Pascua's opinion is "inconsistent with the claimant's activities of daily living[ ] and the description of claimant's engagement with group therapy." *Id.* Instead, the ALJ, gave greater weight to the opinion of reviewing physician, Dr. John Nance, because he was able to review the entire medical record.

Social Security regulations divide opinions into two categories, those from "acceptable sources," and those from "other medical sources." 20 C.F.R. § 404.1527. Nurses and nurse practitioners are typically considered "other medical sources." *See Garrison,* 759 F.3d at 1013-14. Despite this distinction, an ALJ must still consider the opinions of medical providers who are not considered "acceptable medical sources." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017). 20 C.F.R. § 404.1527(f)(1) states that

> an opinion from a medical source who is not an acceptable source . . . may outweigh the medical opinion of an acceptable source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source…

Regardless of its source, the ALJ should evaluate any medical opinion based on a number of factors, including: 1) the examining relationship; 2) the treatment relationship; 3) supportability; 4) consistency and; 5) specialization. *See* 20 C.F.R. § 404.1527(c). However, the regulations caution that depending on the facts of the case, not every factor will apply in every case in evaluating an opinion from a source who is not considered an

acceptable medical source. 20 C.F.R. § 404.1527(f)(1). Although an ALJ may give less deference to "other sources," he may do so only by providing germane reasons for doing so. *Revels*, 874 F.3d at 655.

The ALJ erred in giving little weight to the opinion of Nancy Pascua, ARNP. Although Nurse Pascua is not an acceptable medical source, the ALJ still was required to consider her opinion using the same factors used to evaluate any medical opinion. *See Revels*, 874 F.3d at 655. The ALJ gave a cursory explanation for giving such little weight to Nurse Pascua's opinion and did not articulate his consideration of any of the relevant factors.

One of the factors the ALJ must consider is the source's treatment relationship with the claimant; more weight is given to opinions from treating sources, sources who have examined the claimant a number of times, and sources who have greater knowledge about the claimant's medical impairments. *See* 20 C.F.R. § 404.1527(c)(2)(i). Nurse Pascua saw the plaintiff once a month for nearly a year. AR 1091, 1093, 1098, 1103, 1109, 1114, 1118, 1130, 1135, 1140, 1165. After each encounter with the plaintiff, Nurse Pascua documented the symptoms and history of plaintiff's mental health issues. *Id.* Records from Nurse Pascua's visits with the plaintiff indicate chronic PTSD and document a number of recurring symptoms experienced by the plaintiff, including flashbacks, intrusive thoughts, anxiety, and depression. *Id.* Nurse Pascua's regular visits with the plaintiff over a year-long period would have allowed her to gain a better longitudinal picture of the plaintiff's impairment. The ALJ failed to give the required consideration to Nurse Pascua's treatment relationship with the plaintiff. *See* 20 C.F.R. § 404.1527(f)(1) ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source . . . ").

b. <u>Examining Doctor: Kimberly Wheeler, Ph.D.</u>

Plaintiff contends that the ALJ erred in affording little weight to the opinion of examining psychologist, Kimberly Wheeler, Ph.D. AR 31. The plaintiff argues that the ALJ erred in giving Dr. Wheeler's opinion less weight because Dr. Wheeler, as an examining psychologist, had the benefit of in-person observations of the plaintiff.

Dr. Wheeler's evaluation of the plaintiff lists numerous symptoms that could potentially affect her ability to work, including anxiety, diminished energy, depressed mood, and preoccupied concentration. AR 402. Dr. Wheeler's evaluation also included many of her own observations about plaintiff's behavior during the examination, including an observation of the plaintiff's mood as "anxious and stressed." AR 404. She evaluated the plaintiff's ability to concentrate as outside the normal limits, as plaintiff was "unable to calculate . . . too distracted." AR 405. She also evaluated the plaintiff's memory as outside normal limits. *Id*

In his opinion, the ALJ reasoned that the limitations described by Dr. Wheeler are inconsistent with other objective evidence of the plaintiff's functioning and activities of daily living. The ALJ instead gave weight to the opinion of Dr. Nance, a nonexamining source, because, Dr. Wheeler had only examined the plaintiff once, while Dr. Nance was able to review the entirety of plaintiff's medical record.

If an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject the examining doctor's opinion only by providing specific and legitimate reasons that are supported by substantial evidence from the record. *Revels*, 874 F.3d at 654 (citing *Ryan,* 528 F.3d at 1198). The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. (quoting *Magallanes,* 881 F.2d at 751). In addition, the opinion of a nonexamining

physician cannot by itself constitute "substantial evidence" that would warrant the rejection of an examining physician's opinion. *Id*. at 655.

There is not substantial evidence in the record to support the ALJ's reasoning for giving little weight to Dr. Wheeler's opinion. The ALJ may give greater weight to the opinion of an examining source, like Dr. Wheeler, than to a nonexamining source. *Ryan*, 528 F.3d at 1198. The ALJ did not give specific and legitimate reasons for giving such little weight to Dr. Wheeler's opinion; he provided no citations to the record, nor did he provide any specific examples of concrete conflicting evidence. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The only specific evidence that the ALJ used to explain his treatment of Dr. Wheeler's opinion is a reference to Dr. Nance's opinion, which the ALJ gives greater weight. AR 31. The ALJ's reasons for rejecting Dr. Wheeler's opinion were vague and conclusory, and he erred by failing to provide a detailed and thorough summary of the facts and conflicting clinical evidence when giving little weight to Dr. Wheeler's opinion.

      c. <u>Examining Doctor: Natalie Boodin, M.D.</u>

Plaintiff contends that the ALJ failed to give proper weight to the opinion of treating physician Natalie Boodin, M.D., and that Dr. Boodin properly documented the plaintiff's marked limitations. The plaintiff contends that the ALJ failed to justify his rejection of Dr. Boodin's opinion.

Dr. Boodin's opinion addressed the plaintiff's physical symptoms and any limitations stemming from them. AR 857-60. Dr. Boodin evaluated potential physical limitations that the plaintiff might face in a work setting. Dr. Boodin's opinion was that plaintiff should not lift anything greater than 20 pounds, would need to take a break every one to two hours, was capable of a low stress job, and that plaintiff's symptoms would interfere with her ability to perform work for up to half of a work day. *Id.*

The ALJ gave little weight to Dr. Boodin's opinion because "the opinion is inconsistent with the objective evidence of claimant's physical impairments." AR 31. Although Dr. Boodin noted that the plaintiff had failed conservative treatment, the ALJ stated that the lack of evaluation by specialists, opioid pain medication, and other treatment modalities does not support the allegation that the plaintiff has failed conservative treatment. *Id.* The ALJ found that the medical evidence in the record does not support Dr. Boodin's opinion.

The record does not support the ALJ's inconsistency finding. The record contains significant documentation of plaintiff's back pain. AR 453-54 (ARNP Seth Mercurio documented back pain and burning down the left leg and marked plaintiff as positive for myalgias and back pain); AR 626 (diagnosis with meralgia paresthetica of left side); AR 946 (physical therapist's assessment shows that patient presents with signs and symptoms consistent with generalized low back pain). The patient was also prescribed numerous medications to treat her back and leg pain. AR 1106-07. Dr. Boodin believed the patient's back pain to be related to fibromyalgia. AR 940. The plaintiff's reports of back pain were consistently noted and observed by multiple providers. When viewing the record in its entirety, it does not support the ALJ's rejection of Dr. Boodin's opinion.

        d.     <u>Reviewing Doctor: John B. Nance, Ph.D.</u>

Dr. Nance, Ph.D., reviewed Ms. Moorman's medical records and rendered an opinion on February 17, 2016. AR 1173-81. Plaintiff contends that the ALJ erred by discounting a portion of Dr. Nance's assessment: that Ms. Moorman would have marked difficulty working with the public, and therefore she "could work away from the public and have casual coworker contact without being required to do teamwork." AR 29, 1174, 1180.

Dr. Nance's opinion was corroborated by Dr. Wheeler's examining opinion. Dr. Wheeler's evaluation identified numerous symptoms that could potentially affect the plaintiff's

ability to work, including anxiety, diminished energy, depressed mood, and preoccupied concentration. AR 402. Dr. Wheeler's evaluation also included many of her own observations about the plaintiff's behavior during the examination, including an observation of the plaintiff's mood as "anxious and stressed." AR 404. She evaluated the plaintiff's ability to concentrate as outside the normal limits, as plaintiff was "unable to calculate . . . too distracted." AR 405. She also evaluated the plaintiff's memory as outside normal limits. *Id.* All of these observations and assessments are consistent with Dr. Nance's opinion that Ms. Moorman would have marked difficulty interacting with the public and being a teammate with colleagues. For the same reasons that Dr. Wheeler's opinion should be afforded greater weight, the Court concludes that the ALJ erred in rejecting Dr. Nance's opinion that Ms. Moorman's capacity for working with the public and with other colleagues is markedly diminished.

II. **The ALJ's Assessment of Plaintiff's Subjective Testimony**

Plaintiff contends that the ALJ erred in discounting her subjective testimony. Specifically, she contends the ALJ's findings are inconsistent with her medical record, function report, and her own testimony.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid as long as that determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

When gauging a plaintiff's credibility, an ALJ must engage in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.* To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

a. <u>Activities of Daily Living</u>

Plaintiff alleges that the ALJ erred when the ALJ found that plaintiff's daily activities were inconsistent with her mental symptoms and limitations. AR 29. Although the ALJ found that limitations the plaintiff reported were not persuasive given the lack of medically determinable physical impairments, plaintiff argues that the limitations caused by the plaintiff's mental symptoms still significantly affect her activities of daily living.

The ALJ explained his finding by pointing to evidence in the record that plaintiff could prepare meals, do housework, attend to her personal grooming needs, leave the home alone, drive, shop in stores, handle money, and help her teenage son with his homework. AR 29. The ALJ found that these activities are inconsistent with the plaintiff's alleged symptoms. *Id.*

Considering the record as a whole, however, the activities highlighted by the ALJ do not controvert the symptoms documented by plaintiff's medical records and testimony. An ALJ cannot develop an evidentiary basis for his findings without fully accounting for the context of

all testimony and reports. *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998); *see also Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples to show why they do not believe a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard."). The activities highlighted by the ALJ are not incompatible with the limitations alleged by plaintiff.

Even though the plaintiff is able to carry out certain daily activities, such as grocery shopping and driving a car, the Ninth Circuit has repeatedly held that these types of daily activities do not necessarily detract from a claimant's credibility. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled"). Further, plaintiff's medical care providers have consistently noted that the plaintiff's daily activities were significantly restricted by her symptoms. AR 403 (Dr. Wheeler reported that the plaintiff would have marked difficulty completing a normal work day or week), AR 859-60 (Dr. Boodin reported that the plaintiff's symptoms were so severe that they would interfere with her concentration and attention for half of the day or less); AR 984 (Milana Robben, a mental health counselor, wrote that the plaintiff experiences a loss of functioning in daily life); AR 854 (ARNP Pascua stated that the plaintiff would have severe difficulty completing a normal workday or workweek). Thus, the ALJ failed to take into account the entire record when discounting the plaintiff's testimony regarding the severity of her symptoms.

In assessing plaintiff's RFC, the ALJ found that the evidence regarding plaintiff's alleged problems with memory and concentration is equivocal. He cited conflicting evidence from the record, some of which shows that plaintiff has problems with memory and concentration while some shows no issues in these areas. Further, he cites the same daily activities – driving, shopping in stores, handling money, and helping her son with homework – as evidence that plaintiff's memory and concentration problems do not severely affect her activities of daily living.

However, a reviewing court must review the record as a whole and not "affirm simply by isolating a specific quantum of evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). The evidence the ALJ highlighted does not provide a clear and convincing reason to discount the plaintiff's medical records and testimony regarding her memory and concentration problems. Plaintiff's medical records consistently indicate difficulties with her memory and cognition. These observations are supported by self-reports from the plaintiff as well as objective observations by her medical providers. AR 378, 394, 414, 460. For instance, medical assistant Tina Santiago noted that the plaintiff's symptoms included difficulty concentrating, which was supported by clinical evidence. AR 502-04. Nurse Kelly Faust noted that the plaintiff seemed to have a delayed thought process. AR 388. Additionally, records from the plaintiff's group therapy sessions indicate continued issues with understanding and following directions when assigned tasks. AR 1039, 1045, 1053. When viewed in its entirety, the record does not support the ALJ's assessment of the plaintiff's activities of daily living.

        b.      <u>Adequate Mental Health Treatment</u>

The ALJ found that the plaintiff was not adequately treated for her mental health impairments and that her treatment history suggested her symptoms were less limiting than she

alleged. The ALJ cites to the fact that the plaintiff's medications were managed by an ARNP rather than a doctor and that she did not see a psychiatrist regularly. AR 29.

Plaintiff argues that she was adequately treated for her mental health impairments. She alleges that the ALJ failed to review the record thoroughly. She argues that she was treated for anxiety or depression at least once a month for over 23 months and that this constitutes adequate mental health treatment.

An unexplained, or inadequately explained, failure to seek treatment may lead to an adverse credibility finding. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, the record in Ms. Moorman's case does not indicate that she failed to seek treatment for her mental health problems. Plaintiff attended weekly group therapy session which lasted between 60 and 90 minutes. AR 988-1164. Plaintiff stated at her hearing that she was still attending these sessions. AR 63. Her medications were managed by ARNP Pascua, whom she met with regularly every month for approximately one year. Further, all of ARNP Pascua's records regarding her treatment of the plaintiff include an assessment and report of the patient's symptoms as well as a treatment plan. AR 1091, 1093, 1098, 1103, 1109, 1114, 1118, 1130, 1135, 1140, 1165.[1] The plaintiff was evaluated by numerous health care providers and at one point was even admitted to a crisis stabilization unit for two nights. AR 468-501. The record demonstrates plaintiff consistently sought treatment for her symptoms. The ALJ's finding to the contrary is not supported by substantial evidence.

---

[1] There is no evidence as to why the plaintiff did not seek individual treatment from a psychiatrist, but other evidence in the record indicates that the plaintiff was having significant financial difficulties. *E.g.*, AR 975 (financial problems noted as part of mental health treatment intake in October 2014), AR 1101 (notes of treatment provider indicated that Ms. Moorman expressed fear of having to reunite with husband due to financial needs, in September 2015), AR 1208 (physical therapist's notes in 2016 indicate that Ms. Moorman said she cannot continue with aquatic physical therapy because she cannot financially afford to go to the community pool). At the administrative hearing, the ALJ did not inquire as to why the plaintiff did not receive regular one-on-one treatment from a psychiatrist.

III. **The ALJ's RFC Assessment**

A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine tasks, SVP 1 or 2, and superficial public contact." AR 27.

But because, as discussed above, the ALJ erred in failing to properly weigh the medical opinions of the plaintiff's health care providers and assess plaintiff's credibility regarding her symptoms, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations. Accordingly, the ALJ erred here as well.

IV. The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ can do this through the testimony of a

vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-01. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy based on the vocational expert's testimony at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 65-70. But because, as discussed above, the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – cannot be said to be supported by substantial evidence or free of error.

V. <u>Remand for Further Administrative Proceedings</u>

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only "where '(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Trevizo*, 871 F.2d at 682-83 (quoting *Garrison,* 759 F.3d at 1020).

The Ninth Circuit has recently applied the "credit-as-true" rule by first asking: Were the ALJ's reasons for rejecting the evidence legally insufficient? *Leon*, 880 F.3d at 1045-46. Then, having answered that question in the affirmative, the Court considered the second step in the analysis: Are there remaining issues that must resolved before a disability determination can be made, and would further administrative proceedings be useful? *Id.* The Court confirmed that the third step would result in an award of benefits only if the questions at parts one and two of the analysis are answered yes – and crediting the improperly discredited evidence as true, further proceedings would appear to be unnecessary. *Id.*

The Court in *Leon* held that—even where the district court finds in the first part of the analysis that the ALJ has failed to offer sufficient reasons for rejecting evidence, and also finds in the second part of the analysis that there is "a fully developed record without any conflicts, gaps, or ambiguities," and credits the rejected evidence as true the third part of the analysis—the Court still has discretion to remand for further proceedings or for an award of benefits. *Id.* at 1047-48. If, considering the record as a whole, there are reasons for the district court to have serious doubt as to whether the claimant is disabled, the district court retains discretion to remand to the agency for additional proceedings. *Id.* at 1048.

As discussed above, the ALJ erred in giving little weight to the opinions of Nurse Pascua, Dr. Wheeler, Dr. Boodin, and Dr. Nance, and the ALJ failed to provide legally sufficient reasons for discounting the plaintiff's credibility concerning the severity of her symptoms. Accordingly, because issues still remain regarding the medical opinions, plaintiff's credibility, the plaintiff's RFC, and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted. The ALJ is directed to evaluate the medical evidence, including any new medical evidence that may be available, and re-weigh the opinions of Dr. Wheeler, Dr. Boodin, Dr. Nance, and ARNP Pascua. In addition, the ALJ is directed to consider Ms. Moorman's testimony about the severity of her symptoms under the appropriate legal standards and re-evaluate her RFC and step-five determination in light of this Court's opinion.

## CONCLUSION

Based on the foregoing discussion, the undersigned finds the ALJ erred in determining that plaintiff was not disabled. Defendant's decision to deny benefits is therefore REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 1st day of June, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge